UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
STATE OF RHODE ISLAND,             )
                                   )    C.A. No. 18-395 WES
        Plaintiff,                 )
                                   )
    v.                             )
                                   )
CHEVRON CORP. et al.,              )
                                   )
        Defendants.                )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, Chief Judge.

The State of Rhode Island brings this suit against energy companies it says are partly responsible for our once and future climate crisis. It does so under state law and, at least initially, in state court. Defendants removed the case here; the State asks that it go back. Because there is no federal jurisdiction under the various statutes and doctrines adverted to by Defendants, the Court GRANTS the State's Motion to Remand, ECF No. 40.

I.  Background[1]

Climate change is expensive, and the State wants help paying for it. Compl. ¶¶ 8, 12. Specifically from Defendants in this case, who together have extracted, advertised, and sold a

---

[1] As given in the State's complaint. See Ten Taxpayer Citizens Grp. v. Cape Wind Assocs., 373 F.3d 183, 186 (1st Cir. 2004).

substantial percentage of the fossil fuels burned globally since the 1960s. Id. ¶¶ 7, 12, 19, 97. This activity has released an immense amount of greenhouse gas into the Earth's atmosphere, id., changing its climate and leading to all kinds of displacement, death (extinctions, even), and destruction, id. ¶¶ 53, 89-90, 199-213, 216. What is more, Defendants understood the consequences of their activity decades ago, when transitioning from fossil fuels to renewable sources of energy would have saved a world of trouble. Id. ¶¶ 106-46; 184-96. But instead of sounding the alarm, Defendants went out of their way to becloud the emerging scientific consensus and further delay changes — however existentially necessary — that would in any way interfere with their multi-billion-dollar profits. Id. ¶¶ 147-77. All while quietly readying their capital for the coming fallout. Id. ¶¶ 178-83.

Pleading eight state-law causes of action, the State prays in law and equity to relieve the damage Defendants have and will inflict upon all the non-federal property and natural resources in Rhode Island. Id. ¶¶ 225-315. Casualties are expected to include the State's manmade infrastructure, its roads, bridges, railroads, dams, homes, businesses, and electric grid; the location and integrity of the State's expansive coastline, along with the wildlife who call it home; the mild summers and the winters that are already barely tolerable; the State fisc, as vast sums are expended to fortify before and rebuild after the increasing and

increasingly severe weather events; and Rhode Islanders themselves, who will be injured or worse by these events. Id. ¶¶ 8, 12, 15–18, 88–93, 197–218. The State says it will have more to bear than most: Sea levels in New England are increasing three to four times faster than the global average, and many of the State's municipalities lie below the floodplain. Id. ¶¶ 59–61, 76.

This is, needless to say, an important suit for both sides. The question presently before the Court is where in our federal system it will be decided.

II. Discussion

Invented to protect nonresidents from state-court tribalism, 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3721 (rev. 4th ed. 2018), the right to remove is found in various statutes, which courts have taken to construing narrowly and against removal. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941); Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 76 (1st Cir. 2009); Rosselló-González v. Calderón-Serra, 398 F.3d 1, 11 (1st. Cir. 2004). Defendants cite several of these in their notice as bases for federal-court jurisdiction. Notice of Removal, ECF No. 1. None, however, allows Defendants to carry their burden of showing the case belongs here. See Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921) ("[D]efendant must take and carry the burden of proof, he being the actor in the removal proceeding.").

A. General Removal

The first Defendants invoke is the general removal statute. 28 U.S.C. § 1441. Section 1441 allows a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." The species of original jurisdiction Defendants claim exists in this case is federal-question jurisdiction. 28 U.S.C. § 1331. They argue, in other words, that Plaintiff's case arises under federal law. Whether a case arises under federal law is governed by the well-pleaded complaint rule. Vaden v. Discover Bank, 556 U.S. 49, 60 (2009). The rule states that removal based on federal-question jurisdiction is only proper where a federal question appears on the face of a well-pleaded complaint. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). This rule operationalizes the maxim that a plaintiff is the master of her complaint: She may assert certain causes of action and omit others (even ones obviously available), and thereby appeal to the jurisdiction of her choice. Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 809 n.6 (1986); Caterpillar Inc., 482 U.S. at 392 ("[Plaintiff] may avoid federal jurisdiction by exclusive reliance on state law.").

The State's complaint, on its face, contains no federal question, relying as it does on only state-law causes of action. See Compl. ¶¶ 225–315. Defendants nevertheless insist that the

4

complaint is not well-pleaded, and that if it were, it would, in fact, evince a federal question on which to hang federal jurisdiction. Here they invoke the artful-pleading doctrine. "[A]n independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint," Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 22 (1983), the artful-pleading doctrine is "designed to prevent a plaintiff from unfairly placing a thumb on the jurisdictional scales," López-Muñoz v. Triple-S Salud, Inc., 754 F.3d 1, 5 (1st Cir. 2014). See Wright & Miller, supra, § 3722.1. According to Defendants, the State uses two strains of artifice in an attempt to keep its case in state court: one based on complete preemption, the other on a substantial federal question. See Wright & Miller, supra, § 3722.1 (discussing the three types of case in which the artful pleading doctrine has applied).

    1.   Complete Preemption

Taking these in turn, Defendants first argue — and two district courts have recently held — that a state's public-nuisance claim premised on the effects of climate change is "necessarily governed by federal common law." California v. BP P.L.C., Nos. C 17-06011 WHA, C 17-06012 WHA, 2018 WL 1064293, at *2 (N.D. Cal. Feb. 27, 2018); accord City of New York v. BP P.L.C., 325 F. Supp. 3d 466, 471-72 (S.D.N.Y. 2018). Defendants, in essence, want the

5

Court to peek beneath the purported state-law façade of the State's public-nuisance claim, see the claim for what it would need to be to have a chance at viability, and convert it to that (i.e., into a claim based on federal common law) for purposes of the present jurisdictional analysis.  The problem for Defendants is that there is nothing in the artful-pleading doctrine that sanctions this particular transformation.

The closest the doctrine gets to doing so is called complete preemption.  Compare Defs.' Opp'n to Pl.'s Mot. to Remand 9, ECF No. 87 ("[T]he Complaint pleads claims that arise, if at all, under federal common law . . . .") and id. at 19 ("[Plaintiff's claims] are necessarily governed by federal common law."), with Franchise Tax Bd., 463 U.S. at 24 ("[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."); see also Mayor of Balt. v. BP P.L.C., Civil Action No. ELH-18-2357, 2019 WL 2436848, at *6–7 (D. Md. June 20, 2019).  Complete preemption is different from ordinary preemption, which is a defense and therefore does not provide a basis for removal, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."  Franchise Tax Bd., 463 U.S.

at 14, 24.² It is a difference of kind, moreover, not degree: complete preemption is jurisdictional. López–Muñoz, 754 F.3d at 5; Lehmann v. Brown, 230 F.3d 916, 919–920 (7th Cir. 2000); Wright & Miller, supra, § 3722.2. When a state-law cause of action is completely preempted, it "transmogrifies" into, Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 17–18 (1st Cir. 2018), or less dramatically, "is considered, from its inception, a federal claim, and therefore arises under federal law," Caterpillar Inc., 482 U.S. at 393. The claim is then removable pursuant to Section 1441. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003).

Congress, not the federal courts, initiates this "extreme and unusual" mechanism. Fayard v. Ne. Vehicle Servs., LLC, 533 F.3d 42, 47–49 (1st Cir. 2008); see, e.g., Beneficial Nat'l Bank, 539 U.S. at 8 ("[W]here this Court has found complete pre-emption . . . the federal statutes at issue provided the exclusive cause

---

² Defendants cite Boyle v. United Technologies Corp. early in their brief, and highlighted it at oral argument, as recommending that this Court consider the State's suit as one implicating "uniquely federal interests" and consequently governed by federal common law. 487 U.S. 500, 504 (1988). Boyle was not a removal case, but rather one brought in diversity, where the Court held that federal common law regarding the performance of federal procurement contracts preempts, in the ordinary sense, state tort law. Id. at 502, 507–08, 512. Boyle therefore does not help Defendants. And although of no legal moment, it is nonetheless a matter of historical interest that out of all his opinions, Boyle was the one Justice Scalia would have most liked to have had back. Gil Seinfeld, The Good, the Bad, and the Ugly: Reflections of a Counterclerk, 114 Mich. L. Rev. First Impressions 111, 115 & n. 9 (2016).

7

of action for the claim asserted and also set forth procedures and remedies governing that cause of action." (emphasis added)); Caterpillar Inc., 482 U.S. at 393 ("On occasion, the Court has concluded that the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." (quotation marks omitted) (emphasis added)); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63–64 (1987) ("Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." (emphasis added)); López–Muñoz, 754 F.3d at 5 ("The linchpin of the complete preemption analysis is whether Congress intended that federal law provide the exclusive cause of action for the claims asserted by the plaintiff." (emphasis added)); Fayard, 533 F.3d at 45 ("Complete preemption is a short-hand for the doctrine that in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be recharacterized as a federal claim." (first emphasis added)); Marcus v. AT&T Corp., 138 F.3d 46, 55 (2d Cir. 1998) ("[T]here is no complete preemption without a clear statement to that effect from Congress." (emphasis added)); Wright & Miller, supra, § 3722.2 ("In concluding that a claim is completely preempted, a federal court finds that Congress desired not just to provide a federal defense to a state-law claim but

8

also to replace the state-law claim with a federal law claim . . . ." (emphasis added)). Without a federal statute wielding — or authorizing the federal courts to wield — "extraordinary preemptive power," there can be no complete preemption. Metro. Life Ins. Co., 481 U.S. at 65.

Defendants are right that transborder air and water disputes are one of the limited areas where federal common law survived Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). See, e.g., Am. Elec. Power Co. v. Connecticut, 564 U.S. 410, 420–21 (2011); Illinois v. City of Milwaukee, 406 U.S. 91, 103 (1972) ("When we deal with air and water in their ambient or interstate aspects, there is a federal common law."). At least some of it, though, has been displaced by the Clean Air Act ("CAA"). See Am. Elec. Power Co., 564 U.S. at 424 (holding that "the Clean Air Act and the EPA actions it authorizes displace any federal common law right to seek abatement of carbon-dioxide emissions from fossil-fuel fired power plants"); Native Village of Kivalina v. ExxonMobil Corp., 696 F.3d 849, 856–58 (9th Cir. 2012). But whether displaced or not, environmental federal common law does not — absent congressional say-so — completely preempt the State's public-nuisance claim, and therefore provides no basis for removal. Cf. Marcus, 138 F.3d at 54 ("After Metropolitan Life, it would be disingenuous to maintain that, while the [Federal Communications Act of 1934] does not preempt state law claims directly, it manages

9

to do so indirectly under the guise of federal common law.").

With respect to the CAA, Defendants argue it too completely preempts the State's claims. The statutes that have been found to completely preempt state-law causes of action — the Employee Retirement Income Security Act, for example, see Metro. Life Ins. Co., 481 U.S. at 67 — all do two things: They "provide[] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." Beneficial Nat'l Bank, 539 U.S. at 8; Fayard, 533 F.3d at 47 ("For complete preemption, the critical question is whether federal law provides an exclusive substitute federal cause of action that a federal court (or possibly a federal agency) can employ for the kind of claim or wrong at issue."). Defendants fail to point to where in the CAA this happens. As far as the Court can tell, the CAA authorizes nothing like the State's claims, much less to the exclusion of those sounding in state law. In fact, the CAA itself says that controlling air pollution "is the primary responsibility of States and local governments." 42 U.S.C. § 7401(a)(3); see Am. Elec. Power Co., 564 U.S. at 428 ("The Act envisions extensive cooperation between federal and state authorities . . . ."); EPA v. EME Homer City Generation, L.P., 572 U.S. 489, 537 (2014) (Scalia, J., dissenting) ("Down to its very core, the Clean Air Act sets forth a federalism-focused regulatory strategy.").

Furthermore, in its section providing for citizen suits, the

10

CAA saves "any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief." 42 U.S.C. § 7604(e). One circuit court has taken this language as an indication that "Congress did not wish to abolish state control" over remediating air pollution. Her Majesty the Queen in Right v. City of Detroit, 874 F.2d 332, 343 (6th Cir. 1989); see also Am. Fuel & Petrochemical Mfrs. v. O'Keefe, 903 F.3d 903 (9th Cir. 2018) ("Air pollution prevention falls under the broad police powers of the states, which include the power to protect the health of citizens in the state." (quotation marks omitted)). Elsewhere, the Act protects "the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution . . . ." 42 U.S.C. § 7416. A statute that goes so far out of its way to preserve state prerogatives cannot be said to be an expression of Congress's "extraordinary pre-emptive power" to convert state-law into federal-law claims. Metro. Life Ins. Co., 481 U.S. at 65. No court has so held, and neither will this one.[3]

---

[3] Defendants toss in an argument that the foreign-affairs doctrine completely preempts the State's claims. The Court finds this argument without a plausible legal basis. See Mayor of Balt., 2019 WL 2436848, at *12 ("[T]he foreign affairs doctrine is inapposite in the complete preemption context." (quotation marks omitted)).

2. <u>Grable</u> Jurisdiction

There is, as mentioned above, a second brand of artful pleading of which Defendants accuse the State. They aver the State has hid within their state-law claims a "federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 314 (2005). If complete preemption is a state-law cloche covering a federal-law dish, <u>Grable</u> jurisdiction is a state-law recipe requiring a federal-law ingredient. Although the latter, like the former, is rare. <u>See</u> <u>Empire Healthchoice Assurance, Inc. v. McVeigh</u>, 547 U.S. 677, 699 (2006) (describing Grable jurisdiction as lying in a "special and small category" of cases). And it too does not exist here, because Defendants have not located "a right or immunity created by the Constitution or laws of the United States" that is "an element and an essential one, of the [State]'s cause[s] of action." <u>Gully v. First Nat. Bank in Meridian</u>, 299 U.S. 109, 112 (1936).

The State's are thoroughly state-law claims. Compl ¶¶ 225–315. The rights, duties, and rules of decision implicated by the complaint are all supplied by state law, without reference to anything federal. <u>See</u> <u>id.</u> Defendants' best cases are all distinguishable on this point. <u>See</u> <u>Gunn v. Minton</u>, 568 U.S. 251, 259 (2013) (finding <u>Grable</u> jurisdiction lies where "[t]o prevail

12

on his legal malpractice claim . . . [plaintiff] must show that he would have prevailed in his federal patent infringement case . . . [which] will necessarily require application of patent law to the facts of [his] case"); Grable, 545 U.S. at 314–15 (same where plaintiff "premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law"); Bd. of Comm'rs v. Tenn. Gas Pipeline Co., 850 F.3d 714, 722 (5th Cir. 2017) (same where "[plaintiff's] complaint draws on federal law as the exclusive basis for holding [d]efendants liable for some of their actions"); One & Ken Valley Hous. Grp. v. Me. State Hous. Auth., 716 F.3d 218, 225 (1st Cir. 2013) (same where "the "dispute . . . turn[s] on the interpretation of a contract provision approved by a federal agency pursuant to a federal statutory scheme" (quotation marks omitted)); R.I. Fishermen's All., Inc. v. R.I. Dep't of Envtl. Mgmt., 585 F.3d 42, 50 (1st Cir. 2009) (same where the federal question "is inherent in the state-law question itself because the state statute expressly references federal law").

By mentioning foreign affairs, federal regulations, and the navigable waters of the United States, Defendants seek to raise issues that they may press in the course of this litigation, but that are not perforce presented by the State's claims. Accord Cty. of San Mateo v. Chevron Corp., 294 F. Supp. 3d 934, 938 (N.D. Cal. 2018) (declining to exercise Grable jurisdiction where

13

"defendants have not pointed to a specific issue of federal law that must necessarily be resolved to adjudicate the state law claims" and instead "mostly gesture to federal law and federal concerns in a generalized way"); cf. R.I. Fishermen's All., 585 F.3d at 49 (upholding exercise of Grable jurisdiction where it was "not logically possible for the plaintiffs to prevail on [their] cause of action without affirmatively answering the embedded question of . . . federal law"). These are, if anything, premature defenses, which even if ultimately decisive, cannot support removal. See Merrell Dow, 478 U.S. at 808 ("A defense that raises a federal question is inadequate to confer federal jurisdiction."); Franchise Tax Bd., 463 U.S. at 13 (holding that state-law claim did not support federal jurisdiction where "California law establish[ed] . . . [the relevant] set of conditions, without reference to federal law . . . [which would] become[] relevant only by way of a defense to an obligation created entirely by state law, and then only if appellant has made out a valid claim for relief under state law"). Nor, for that matter, can the novelty of this suite of issues as applied to claims like the State's. Merrell Dow, 478 U.S. at 817.

    B.    Less-General Removal

The Court will be brief in dismissing Defendants' arguments under bespoke jurisdictional law. The Outer Continental Shelf Lands Act does not grant federal jurisdiction here, see 43 U.S.C.

14

§ 1349(b): Defendants' operations on the Outer Continental Shelf may have contributed to the State's injuries; however, Defendants have not shown that these injuries would not have occurred but for those operations. See In re DEEPWATER HORIZON, 745 F.3d 157, 163–64 (5th Cir. 2014). There is no federal-enclave jurisdiction: Although federal land used "for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings," U.S. Const. art. I, § 8, cl. 17, exists in Rhode Island, and elsewhere may have been the site of Defendants' activities, the State's claims did not arise there, especially since its complaint avoids seeking relief for damages to any federal lands. See Washington v. Monsanto Co., 274 F. Supp. 3d 1125, 1132 (W.D. Wash. 2017) (holding that exercise of federal-enclave jurisdiction improper where "Washington avowedly does not seek relief for [toxic-chemical] contamination of federal territories").

No causal connection between any actions Defendants took while "acting under" federal officers or agencies and the allegations supporting the State's claims means there are not grounds for federal-officer removal, 28 U.S.C. § 1442(a)(1): Defendants cannot show the alleged promotion and sale of fossil fuels abetted by a sophisticated misinformation campaign were "justified by [their] federal duty." Mesa v. California, 489 U.S. 121, 131-32 (1989). They are also unable to show removal is proper under the bankruptcy-removal statute, 28 U.S.C. § 1452(a), or

because of admiralty jurisdiction, 28 U.S.C. § 1333(1). Not the former because this is an action "designed primarily to protect the public safety and welfare." McMullen v. Sevigny (In re McMullen), 386 F.3d 320, 325 (1st Cir. 2004); see 28 U.S.C. § 1452(a) (excepting from bankruptcy removal any "civil action by a governmental unit to enforce such governmental unit's police or regulatory power"); In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 488 F.3d 112, 133 (2d Cir. 2007) (rejecting bankruptcy removal in cases whose "clear goal . . . [was] to remedy and prevent environmental damage with potentially serious consequences for public health, a significant area of state policy"). And not the latter either because state-law claims cannot be removed based solely on federal admiralty jurisdiction. See, e.g., Coronel v. AK Victory, 1 F. Supp. 3d 1175, 1187–88 (W.D. Wash. 2014); Gonzalez v. Red Hook Container Terminal LLC, 16-CV-5104 (NGG) (RER), 2016 WL 7322335, at *3 (E.D.N.Y. Dec. 15, 2016) (relying on "longstanding precedent holding that admiralty issues, standing alone, are insufficient to make a case removable").

III. Conclusion

Federal jurisdiction is finite. See, e.g., U.S. Const. art. III, § 2, cl. 1. So while this Court thinks itself a fine place to litigate, the law is clear that the State can take its business elsewhere if it wants — by pleading around federal jurisdiction — unless Defendants provide a valid reason to force removal under

statutes "strictly construed." Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002); Great N. Ry. Co. v. Alexander, 246 U.S. 276, 280 (1918) ("[A] suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress."). Because Defendants' attempts in this regard fall short, the State's Motion to Remand, ECF No. 40, is GRANTED. The remand order shall be stayed for sixty days, however, giving the parties time to brief and the Court to decide whether a further stay pending appeal is warranted.

IT IS SO ORDERED.

/s/ WESmith
William E. Smith
Chief Judge
Date: July 22, 2019