# United States Court of Appeals
## For the First Circuit

---

No. 19-1818

STATE OF RHODE ISLAND,

Plaintiff, Appellee,

v.

SHELL OIL PRODUCTS CO., L.L.C.; CHEVRON CORP.; CHEVRON USA, INC.; EXXONMOBIL CORP.; BP, PLC; BP AMERICA, INC.; BP PRODUCTS NORTH AMERICA, INC.; ROYAL DUTCH SHELL P.L.C.; MOTIVA ENTERPRISES, L.L.C.; CITGO PETROLEUM CORP.; CONOCOPHILLIPS; CONOCOPHILLIPS CO.; PHILLIPS 66; MARATHON OIL CO.; MARATHON PETROLEUM CORP.; MARATHON PETROLEUM CO., L.P.; SPEEDWAY, L.L.C.; HESS CORP.; LUKOIL PAN AMERICAS L.L.C.; AND DOES 1-100,

Defendants, Appellants,

GETTY PETROLEUM MARKETING, INC.

Defendant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, District Judge]

---

Before

Thompson and Howard,
Circuit Judges.*

---

* Judge Torruella heard argument in this appeal. But he did not participate in the decision, which is being rendered by a "quorum" of the panel. See 28 U.S.C. § 46(d).

Theodore J. Boutrous, Jr., Thomas G. Hungar, Anne Champion, Gibson, Dunn & Crutcher LLP, Gerald J. Petros, Robin L. Main, Ryan M. Gainor, Hinckley, Allen & Snyder LLP, Neal S. Manne, Susman Godfrey LLP, John A. Tarantino, Patricia K. Rocha, Nicole J. Benjamin, Adler Pollock & Sheehan P.C., Nancy G. Milburn, Matthew T. Heartney, Jonathan W. Hughes, Arnold & Porter Kaye Scholer LLP, Matthew T. Oliverio, Oliverio & Marcaccio LLP, Theodore V. Wells, Jr., Daniel J. Toal, Jaren Janghorbani, Kannon Shanmugam, Paul, Weiss, Rifkind, Wharton, Garrison LLP, Jeffrey S. Brenner, Nixon Peabody LLP, David C. Frederick, Grace W. Knofczynski, Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., Daniel B. Levin, John E. Bulman, Stephen J. MacGillivray, Pierce Atwood LLP, Nathan P. Eimer, Pamela R. Hanebutt, Lisa S. Meyer, Raphael Janove, Ryan J. Walsh, Eimer Stahl LLP, Michael J. Colucci, Olenn & Penza, LLP, Sean C. Grimsley, Jameson R. Jones, Daniel R. Brody, Bartlit Beck LLP, Robert G. Flanders, Jr., Timothy K. Baldwin, Whelan, Corrente & Flanders, LLP, Steven M. Bauer, Margaret A. Tough, Latham & Watkins LLP, Shannon S. Broome, Shawn Patrick Regan, Ann Marie Mortimer, Hunton Andrews Kurth LLP, Jeffrey B. Pine, Patrick C. Lynch, Lynch & Pine, Jason C. Preciphs, Roberts, Carroll, Feldstein & Peirce, Inc., J. Scott Janoe, Megan Berge, Baker Botts L.L.P., Lauren Motola-Davis, Samuel A. Kennedy-Smith, Lewis Brisbois Bisgaard & Smith LLP, Tracie J. Renfroe, Oliver Peter Thoma, King & Spaulding LLP, Stephen M. Prignano, McIntyre Tate LLP, James Stengel, Robert Reznick, and Orrick, Herrington & Sutcliffe, LLP, on supplemental brief for appellants.

Victor M. Sher, Matthew K. Edling, Sher Edling LLP, and Neil F.X. Kelly, Assistant Attorney General, Office of the Attorney General, on supplemental brief for appellee.

Andrew R. Varcoe, Stephanie A. Maloney, U.S. Chamber Litigation Center, William M. Jay, Andrew Kim, and Goodwin Procter LLP, on supplemental brief for The Chamber of Commerce of The United States of America, amicus curiae.

Linda E. Kelly, Patrick Hedren, Erica Klenicki, Manufacturers' Center for Legal Action, Philip S. Goldberg, Christopher E. Appel, and Shook Hardy & Bacon L.L.P., on supplemental brief for The National Association of Manufacturers, Energy Marketers of America, and The National Association of Convenience Stores, amici curiae.

Steve Marshall, Attorney General of Alabama, Treg Taylor, Attorney General of Alaska, Leslie Rutledge, Attorney General of Arkansas, Christopher Charr, Attorney General of Georgia, Theodore E. Rokita, Attorney General of Indiana, Thomas M. Fisher, Solicitor General, Kian J. Hudson, Deputy Solicitor General, Julia C. Payne, Deputy Attorney General, Derek Schmidt, Attorney General of Kansas, Daniel Cameron, Attorney General of Kentucky, Jeff Landry,

Attorney General of Louisiana, Lynn Fitch, Attorney General of Mississippi, Austin Knudsen, Attorney General of Montana, Doug Peterson, Attorney General of Nebraska, Alan Wilson, Attorney General of South Carolina, Ken Paxton, Attorney General of Texas, Sean Reyes, Attorney General of Utah, and Bridget Hill, Attorney General of Wyoming, on supplemental brief for State of Alabama, State of Alaska, State of Arkansas, State of Georgia, State of Indiana, State of Kansas, Commonwealth of Kentucky, State of Louisiana, State of Mississippi, State of Montana, State of Nebraska, State of South Carolina, State of Texas, State of Utah, and State of Wyoming, amici curiae.

Robert S. Peck and Center For Constitutional Litigation, P.C., on supplemental brief for The National League of Cities, The U.S. Conference of Mayors, and The International Municipal Lawyers Association, amici curiae.

Rob Bonta, Attorney General of California, William Tong, Attorney General of Connecticut, Kathleen Jennings, Attorney General of Delaware, Clare E. Connors, Attorney General of Hawaii, Aaron M. Frey, Attorney General of Maine, Brian E. Frosh, Attorney General of Maryland, Maura Healey, Attorney General of Massachusetts, Seth Schofield, Senior Appellate Counsel, Keith Ellison, Attorney General of Minnesota, Leigh Currie, Special Assistant Attorney General, Andrew J. Bruck, Acting Attorney General of New Jersey, Hector Balderas, Attorney General of New Mexico, Letitia James, Attorney General of New York, Ellen F. Rosenblum, Attorney General of Oregon, Josh Shapiro, Attorney General of Pennsylvania, Thomas J. Donovan, Jr., Attorney General of Vermont, Robert W. Ferguson, Attorney General of Washington, Joshua L. Kaul, Attorney General of Wisconsin, and Karl A. Racine, Attorney General of the District of Columbia, on supplemental brief for State of California, State of Connecticut, State of Delaware, State of Hawaii, State of Maine, State of Maryland, Commonwealth of Massachusetts, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, Commonwealth of Pennsylvania, State of Vermont, State of Washington, State of Wisconsin, and District of Columbia, amici curiae.

Peter Huffman on supplemental brief for Natural Resources Defense Council, amicus curiae.

Kaighn Smith, Jr., and Drummond Woodsum on supplemental brief for Scholars of Foreign Relations and Federal Courts, amici curiae.**

---

** For the names of the attorneys involved in the original appeal, see 979 F.3d 50, 51-53 (1st Cir. 2020).

May 23, 2022

**THOMPSON, Circuit Judge.** This is our second pass at a climate-change case that requires us to explore the mind-numbing complexities of federal removal jurisdiction. See Rhode Island v. Shell Oil Prods. Co., 979 F.3d 50, 54 (1st Cir. 2020) ("Shell Oil"). We start by bringing the reader up to speed.[1]

Like other state and local governments across the country, Rhode Island claims that the Energy Companies named in our caption knew for *decades* that burning fossil fuels is damaging the earth's atmosphere but duped the public into buying more and more of their products (consequences be damned) — all to line their very deep pockets. See id. at 53. Seeking relief for the catastrophic harm they supposedly have done (and will do) to its non-federal property and natural resources, Rhode Island — also like other governments elsewhere — sued the Energy Companies in state court. See id. at 53-54. And its longish complaint alleges state-law causes of action for public nuisance, strict-liability design defect, negligent design defect, negligent failure to warn, impairment of public-trust resources, and violations of the state's Environmental Rights Act.

Not eager to try this case in a Rhode Island court, the Energy Companies removed the matter to federal court under the federal-officer removal statute, the federal-question doctrine,

---

[1] For efficiency's sake, we assume the reader's general familiarity with our Shell Oil opinion.

the Outer Continental Shelf Lands Act (just "OCSLA" from now on), the admiralty-jurisdiction statute, and the bankruptcy-removal statute. But to their disappointment, the district judge thought that none of those grounds could provide a hook on which removal could hang. See id. And so he remanded the case to state court. See id.

On the Energy Companies' appeal — in our first go-around — we concluded that we could only review the federal-officer removal ground. See id. at 58-60. And ruling that the Energy Companies had not satisfied the requirements of the federal-officer removal statute, we affirmed the judge's remand order. See id. at 60. But on the Energy Companies' petition for *certiorari*, the Supreme Court (without reversing our decision on the merits) GVR'd us (short for ***g***ranted certiorari, ***v***acated, and ***r***emanded) and instructed that we give "further consideration in light of BP p.l.c. v. Mayor & City Council of Baltimore, 141 S. Ct. 1532 (2021)" — a then-hot-off-the-presses opinion requiring courts of appeals to review the judge's entire remand order and consider all of the defendants' removal grounds, not just the part of the order resolving the federal-officer removal ground.[2] See

[2] For a good discussion of the GVR mechanism, see Gonzalez v. Justices of the Municipal Court of Boston, 420 F.3d 5, 7-8 (1st Cir. 2005). As a heads-up, today's opinion requires some tolerance for acronyms.

Shell Oil Prods. Co. v. Rhode Island, 141 S. Ct. 2666 (2021) (Mem.).

Pleased to oblige, we requested and received supplemental briefs from counsel.[3] In them, the parties continue battling over whether the Energy Companies can remove the case on various bases. And it is to this dispute that we turn to below, using a *de novo* standard (which gives zero deference to the judge's views) and adding more details when needed to put the arguments into workable perspective. See Amoche v. Guarantee Tr. Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009). But to give away the opinion's ending up front: leaning hard on our sibling circuits' analyses in comparable climate-change cases — particularly County of San Mateo v. Chevron Corp., Nos. 18-15499, 18-15502, 18-15503, 18-16376, 2022 WL 1151275 (9th Cir. Apr. 19, 2022) ("San Mateo"); Mayor & City Council of Baltimore v. BP P.L.C., 31 F.4th 178 (4th Cir. 2022) ("BP P.L.C."); Board of County Commissioners of Boulder County v. Suncor Energy (U.S.A.) Inc., 25 F.4th 1238 (10th Cir. 2022) ("Suncor"); City of Oakland v. BP PLC, 969 F.3d 895, 907 (9th Cir. 2020) ("Oakland"), cert. denied, 141 S. Ct. 2776 (2021) — we once more *affirm* the judge's remand order.

[3] We wish to thank the amici and their attorneys for their helpful insights as well.

**Overarching Considerations**

Federal courts have limited jurisdiction, charted (within constitutional limits) by federal statute. See, e.g., López-Muñoz v. Triple-S Salud, Inc., 754 F.3d 1, 5 (1st Cir. 2014); Fayard v. Ne. Vehicle Servs., LLC, 533 F.3d 42, 48 (1st Cir. 2008) (noting that "[b]oth jurisdiction and removal are primarily creatures of Congress"). And as we are about to see, lots of statutes control removal of state-filed cases to federal court.

A generalized removal statute says that a defendant can remove a state-filed case to federal court only if the plaintiff could have brought the case there originally. See 28 U.S.C. § 1441(a). Pertinently here, a federal court has original jurisdiction over cases that "aris[e] under" federal law — *i.e.*, "the Constitution, *laws*, or treaties *of the United States*," see 28 U.S.C. § 1331 (emphases added), plus "claims founded upon federal common law," see Illinois v. City of Milwaukee, 406 U.S. 91, 100 (1972). Section 1441 is known as the general-removal statute. See, e.g., Home Depot U.S.A., Inc. v. Jackson, 139 S. Ct. 1743, 1746 (2019) ("Home Depot"). And section 1331 is known as the general federal-question jurisdiction statute. See, e.g., Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 829 (2002).

Specialized removal statutes exist too. Take, for instance, the bankruptcy-removal statute, which (in broad strokes)

allows removal to a district court of any claim of which that court would have jurisdiction under another provision that (generally speaking) creates federal jurisdiction for disputes "arising under" the bankruptcy code, disputes "arising in" a bankruptcy case, and disputes "related to" the resolution of a bankruptcy case. See 28 U.S.C. §§ 1452(a), 1334(a)-(b).

Whether a case arises under federal law typically is "determined from what necessarily appears" on the face of a plaintiff's complaint, "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." See Taylor v. Anderson, 234 U.S. 74, 75-76 (1914); see also Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 9-12 (1983). This is known as the well-pleaded-complaint rule, because it concentrates our attention on the complaint's terms. See Franchise Tax Bd., 463 U.S. at 9-10. And in most instances, that rule makes plaintiff the "master" of the complaint — including the master of "what law" plaintiff "will rely upon." See The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913) (Holmes, J., for the Court).

As with many rules, however, exceptions exist. See Rose v. RTN Fed. Credit Union, 1 F.4th 56, 59-60 (1st Cir. 2021). One exception applies when "a state-law claim necessarily raise[s] a stated federal issue," which is "actually disputed and substantial," and which a federal court can consider "without

disturbing any congressionally approved balance" between state and federal power. See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313-16 (2005) ("Grable"); accord R.I. Fishermen's All., Inc. v. R.I. Dep't of Envtl. Mgmt., 585 F.3d 42, 49 (1st Cir. 2009). Only a "*slim* category" of state-law claims satisfies Grable, however. See Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 701 (2006) ("Empire Healthchoice") (emphasis added); San Mateo, 2022 WL 1151275, at *4. Another exception applies when federal law has completely displaced state law and so "provide[s] the exclusive cause of action for such claims" — thus making the asserted claim necessarily federal. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 11 (2003) ("Beneficial"); accord Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987); Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 17 (1st Cir. 2018); López-Muñoz, 754 F.3d at 5.[4] Complete

---

[4] Anything involving "preemption" can be confusing. And in this setting, the word itself can cause even the most sophisticated readers to scratch their collective heads over the difference between "complete preemption" and "ordinary preemption." See Rueli v. Baystate Health, Inc., 835 F.3d 53, 57 (1st Cir. 2016). As a sort of cheat sheet: Only complete preemption affects the court's jurisdiction. See id. Where it exists, "there is . . . no such thing as a state-law claim" in the regulated area because Congress intended federal law to provide the *exclusive* cause of action for that claim. See Beneficial, 539 U.S. at 9, 11. And a court thus treats the complaint as if a federal claim appears on the face of it. See Rivet v. Regions Bank of La., 522 U.S. 470, 476 (1998). Ordinary preemption, contrastingly, "refer[s] to certain *defenses*" to the claim's merits, "of which a classic example is a state claim foreclosed because its assertion conflicts with a federal statute or falls within a field preempted by federal

preemption is a "narrow exception." Beneficial, 539 U.S. at 5.[5] But in the rare situations when it applies, courts sometime derisively describe the complaint as "artfully pleaded" to sidestep the federal claim. See, e.g., Rivet, 522 U.S. at 475.

As the parties trying to remove the case from state to federal court, the Energy Companies must prove that the federal court has original jurisdiction. See 28 U.S.C. § 1441(a); see also Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999). And because removal jurisdiction raises serious federalism concerns, we construe removal statutes *strictly* and *against* removal. See, e.g., Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002); Rosselló-González v. Calderón-Serra, 398 F.3d 1, 11 (1st Cir. 2004). So if federal jurisdiction is doubtful, a federal court must remand to state court. See, e.g., Rosselló-González, 398 F.3d at 11.

law." See Cavallaro v. UMass Mem'l Healthcare, Inc., 678 F.3d 1, 4 n.3 (1st Cir. 2012) (emphasis added). And as a mere defense, ordinary preemption — according to the well-pleaded-complaint rule — "will *not* provide a basis for removal." See Beneficial, 539 U.S. at 6 (emphasis added).

[5] Because complete preemption affects plaintiffs' usual ability to plead the law they want, the Supreme Court is "reluctant" to find the exception applies. See Metro. Life Ins. v. Taylor, 481 U.S. 58, 65 (1987) ("Metro. Life"). The Court, in fact, has found complete preemption in only *three* statutes, see San Mateo, 2022 WL 1151275, at *6: (1) Beneficial, 539 U.S. at 10-11 (National Bank Act §§ 85 and 86); (2) Metro. Life, 481 U.S. at 66-67 (Employee Retirement Income Security Act § 502(a)); and (3) Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 560 (1968) (Labor Management Relations Act § 301).

**Issues in Play**

The Energy Companies argue for removal based on federal-question jurisdiction, which they think exists because (as they tell it) Rhode Island artfully pleaded state claims that are at bottom governed by federal common law; completely preempted by federal law; necessarily dependent on substantial and disputed federal issues; and based on injuries or conduct on federal enclaves. They also argue for removal based on other jurisdictional and removal statutes, namely the OCSLA-jurisdiction statute, the admiralty-jurisdiction statute, and the bankruptcy-removal statute.[6]

---

[6] A word about the federal-officer removal statute — which, like the bankruptcy-removal statute, is a specialized removal statute. This provision allows private actors "acting under" color of federal authority to remove a state-court action "for or relating to any act under color of such office." See 28 U.S.C. § 1442(a)(1). And per our precedent, the Energy Companies must show that they acted under a federal officer, that the claims against them are "for or relating to" the alleged official authority, and that they will raise a colorable federal defense. See Moore v. Elec. Boat Corp., 25 F.4th 30, 34 & n.2 (1st Cir. 2022) (noting that Shell Oil "described the 'relating to' requirement as a 'nexus' between 'the allegations in the complaint and conduct undertaken at the behest of a federal officer,'" but stating that "[t]his nexus requirement is not a causation requirement" (quoting Shell Oil, 979 F.3d at 59)).

As reported in Shell Oil, the Energy Companies direct "us to three contracts with the federal government related to the production of oil and argue that they were 'acting under' a federal officer because they 'help[ed] the Government to produce an item that it needs.'" See 979 F.3d at 59 (alteration in original and quoting Watson v. Philip Morris Cos., 551 U.S. 142, 153 (2007)). But Rhode Island's complaint, we said, alleges that the Energy Companies "produced and sold oil and gas products in Rhode Island that were damaging the environment and engaged in a misinformation

In the pages that follow, we discuss and reject each of the Energy Companies' arguments (again, all in keeping with the recent decisions of other circuit courts).

**Federal-Question Jurisdiction**

*Federal Common Law*

Citing the artful-pleading doctrine, the Energy Companies argue that even though Rhode Island's complaint says nothing about federal common law, the claims alleged "are inherently federal" and necessarily arise under federal law because they are "based on interstate and international emissions" (excess capitalization removed) — *i.e.*, uniquely federal interests, the theory goes, that must be governed by federal common law. To their way of thinking then, Rhode Island's claims amount to federal claims in disguise. Noting our "skepti[cism]" about "the applicability of the artful pleading doctrine outside of complete federal preemption of a state cause of action," see Rosselló-González, 398 F.3d at 12 (citing Franchise Tax Bd. and Rivet), Rhode Island protests that the well-pleaded-complaint rule

---

campaign about the harmful effects of their products on the earth's climate." Id. at 60. And, we ruled, the trio of contracts "mandate[s] none of those activities" — thus making the case *un*removable under the federal-officer removal statute. See id. Because nothing in the Supreme Court's BP p.l.c. opinion undermines that holding (BP p.l.c., remember, only requires us to consider the Energy Companies' other removal grounds), we "adhere to" Shell Oil's rejection of federal-officer removal jurisdiction (and for what it is worth, the Energy Companies identify no shortcomings with that rejection).

(which — as already explained — generally bars removal unless a federal question appears on the complaint's face) stops us from looking behind the complaint and construing the state-law theories as federal common-law ones. But as a fallback, Rhode Island argues that even if the Energy Companies could get around that rule, they would still lose because Congress has replaced the federal common law that they rely on.

Avoiding the kerfuffle over the parties' artful pleading-based arguments — our credo is that "if it is not necessary to decide more, it is necessary not to decide more," see PDK Labs. Inc. v. U.S. D.E.A., 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) — we take the "even if" approach and ultimately conclude the Energy Companies cannot premise removal on a federal common law that no longer exists, see generally 14C Charles A. Wright, Federal Practice and Procedure § 3722.1 (Rev. 4th ed. Apr. 2022) ("Federal Practice and Procedure") (lamenting that "the artful-pleading doctrine lacks precise definition and has bred considerable confusion"). Why we so rule requires some unpacking, however.

While there is no general common law, pockets of federal judge-made law exist that bind the states. See BP P.L.C., 31 F.4th at 200 (providing examples). But the circumstances where the "judicial creation of a special federal rule" ought to displace state law are "few and restricted," see O'Melveny & Meyers v.

F.D.I.C., 512 U.S. 79, 89 (1994) ("O'Melveny") (quotation marks omitted) — limited to those "extraordinary cases," see id., involving both "uniquely federal interests" *and* a "significant conflict . . . between some federal policy or interest and the use of state law," see Boyle v. United Tech. Corp., 487 U.S. 500, 506 (1988) (quotation marks omitted). That makes sense because where federal common law exists, it "pre-empt[s] and replace[s]" state law, see id. at 504 — which raises sensitive issues of separation of powers and federalism, see Rodriguez v. F.D.I.C., 140 S. Ct. 713, 717 (2020) (underscoring that "[j]udicial lawmaking in the form of federal common law plays a necessarily modest role under a Constitution that vests the federal government's 'legislative Powers' in Congress and reserves most other regulatory authority to the States" (quoting U.S. Const. art. 1, § 1)). Critically as well, the side pushing a theory of federal common law must show a "*specific, concrete* federal policy or interest" with which state law directly conflicts "as a *precondition* for recognition of a federal rule of decision." See O'Melveny, 512 U.S. at 87-88 (emphases added).[7]

The Energy Companies spend a lot of time on the "uniquely federal interests" point, highlighting (for instance) the federal government's special concern with "controlling interstate

[7] Courts use "federal rule of decision" to mean "federal common law," and vice versa. See BP P.L.C., 31 F.4th at 200 n.3.

Case: 19-1818 Document: 00117877034 Page: 16 Date Filed: 05/24/2022 Entry ID: 6497322

pollution, promoting energy independence, and negotiating multilateral treaties addressing global warning" — interests, they continue, that call for the application of a "uniform federal rule of decision," which makes the case "removable under 28 U.S.C. §§ 1331 and 1441." But even "[a]ssuming" (without granting) that these concerns constitute "uniquely federal interests," see BP P.L.C., 31 F.4th at 202, we — like the Fourth Circuit in BP P.L.C. — find that the Energy Companies (despite being the burden-bearer on the removal issue) never adequately describe how "any significant conflict exist[s] between" these "federal interests" and the state-law claims, which (again) seek to hold them liable for the climate change-related harms they caused by deliberately misrepresenting the dangers they knew would arise from their deceptive hyping of fossil fuels, see id. at 203-04. Not only does this "misstep" raise a waiver problem. See, e.g., Rodríguez v. Mun. of San Juan, 659 F.3d 168, 175-76 (1st Cir. 2011) (discussing how to set an issue up for decision); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (doing the same and stressing that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work"). It also deals a "fatal" blow to the Energy Companies' bid to base federal-question jurisdiction on federal common law. See BP P.L.C., 31 F.4th at 202 (quoting O'Melveny, 512 U.S. at 88); see Atherton v. F.D.I.C., 519 U.S. 213, 218 (1997)

(confirming that "the guiding principle is that a significant conflict between some federal policy or interest and the use of state law . . . must first be *specifically shown*" (omission in original, emphasis added, and quoting Wallis v. Pan Am. Petroleum Corp., 384 U.S. 63, 68 (1966))).

To the extent the Energy Companies rely on City of New York v. Chevron Corp., 993 F.3d 81 (2d Cir. 2021), to hint at a conflict between the federal government's relations with foreign countries and the rights of states, they are unable to do so. See BP P.L.C., 31 F.4th at 202-03 (rebuffing a similar suggestion in a similar case); Suncor, 25 F.4th at 1262 (same). City of New York, after all, is distinguishable in at least one key respect. There, unlike here, the government "filed suit in *federal court* in the *first instance*" (relying on diversity jurisdiction) — so the court considered the fossil-fuel producers' "preemption defense on its own terms, not under the heightened standard unique to the removability inquiry." See 993 F.3d at 94 (emphases added). And the court found that its ordinary preemption analysis did not clash with the "fleet of cases" (among them Oakland) recognizing that "anticipated defenses" — including those based on federal common law — could not "singlehandedly create federal-question jurisdiction under 28 U.S.C. § 1331 in light of the well-pleaded complaint rule." See id.

Ignoring these problems just for discussion purposes, we still say the Energy Companies fall short. Instead of handling "the threshold inquiry above," they here — like the energy companies in BP P.L.C. — shine a spotlight on some old Supreme Court cases "that once (or possibly) recognized federal common law in the context of interstate pollution and greenhouse-gas emissions." See 31 F.4th at 204. And from there, they intimate that applying state law in this area would upset our constitutional scheme. Put aside how the federal common law they bring up does not address the type of acts Rhode Island seeks judicial redress for.[8] Even accepting the Energy Companies' description of Rhode Island's claims as being "transboundary pollution" claims (again, just for argument's sake), we know that "[w]hen Congress addresses a question previously governed by a decision rested on federal common law . . . the need for such an unusual exercise of law-making by federal courts disappears." See Am. Elec. Power Co. v. Connecticut, 564 U.S. 410, 423 (2011) ("AEP") (quoting City of Milwaukee v. Illinois, 451 U.S. 304, 314 (1981)). The Clean Water Act and the Clean Air Act — neither of which Rhode Island invokes

[8] Rhode Island (to repeat) seeks to hold "[d]efendants" liable for their "tortious conduct" that "deliberately and unnecessarily deceived" consumers about the scientific consensus on climate change and its devastating effects, and about the starring role their products play in causing it (quotes taken from the complaint), *not* to regulate greenhouse-gas emissions (Rhode Island challenges no federal contract, permit, regulation, or treaty, for example).

— "have statutorily displaced any federal common law that previously existed." See BP P.L.C., 31 F.4th at 207. So we cannot rule that any federal common law controls Rhode Island's claims. See id. at 199, 205-06 (saying that although the energy companies "characterize [the government's] claims as 'interstate-pollution claims' that arise under federal common law," Congress displaced the federal common law of interstate pollution, and it would "def[y] logic" to base removal on a "federal common law claim [that] has been deemed displaced, extinguished, and rendered null by the Supreme Court").[9]

*Grable*

The Energy Companies next argue that "[e]ven if" Rhode Island's claims found their origins in state rather than federal law, "removal still would be proper under Grable." Grable, as we signaled a few pages back, requires us to ask if Rhode Island's claims fall into the very rare class that (1) necessarily raise a

[9] Interestingly — and we think tellingly — some of the Energy Companies successfully argued in another case that "the Clean Air Act *displaces* any federal common law claims potentially arising from greenhouse[-]gas emissions" (excess capitalization omitted but emphasis added). See Answering Brief of ExxonMobil et al. at 61, Native Village of Kivalina v. ExxonMobil Corp., 696 F.3d 849 (9th Cir. 2012) ("Kivalina") (No. 09-17490), 2010 WL 3299982, at *61. "Displacement of the federal common law does not leave those injured by air pollution without a remedy," wrote a concurring Kivalina panelist, because "[o]nce federal common law is displaced, state nuisance law becomes an available option to the extent it is not preempted by federal law." See Kivalina, 696 F.3d at 866 (Pro, D.J., concurring) (citing AEP, 564 U.S. at 429).

federal issue that is (2) truly disputed and (3) substantial and that (4) a federal court can decide without upsetting the balance between state and federal judiciaries. See Gunn v. Minton, 568 U.S. 251, 258 (2013) (discussing Grable). Just like other circuits in comparable cases, see San Mateo, 2022 WL 1151275, at *4-6; BP P.L.C., 31 F.4th at 208-15, we answer no.

We begin and end at prong (1), the necessarily-raised prong — which the Energy Companies can satisfy only if a federal issue "is a *necessary* element of one of the well-pleaded state claims" in Rhode Island's complaint. See Franchise Tax Bd., 463 U.S. at 13 (emphasis added); see also Gunn, 568 U.S. at 258 (stressing that jurisdiction lies under Grable only if "all four" prongs "are met"). The best way to wrap one's mind around this prong is to consider what happened in Grable. The IRS seized and sold Grable's real property to satisfy a tax lien. See 545 U.S. at 310. Grable challenged the sale via a quiet-title suit in state court, calling the buyer's title invalid because the IRS had not complied with federal notice requirements. Id. at 311. The buyer removed the case to federal court. Id. The only disputed issue concerned whether Grable got "notice within the meaning of the *federal statute*." See id. at 315 (emphasis added). And the Supreme Court held that such a claim "arises under" federal law because (among other things) there was *nothing* in the suit but *federal law*: state law provided the remedy, a declaration of

ownership — but ownership could not be decided without deciding if the federal government respected *federal* legal demands. See id. In other words, "[d]eciding an issue of federal law was *inescapable*." Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp., 756 F.3d 1032, 1035 (7th Cir. 2014) (emphasis added). Importantly too, "the national government itself was vitally concerned about the outcome; an adverse decision could undercut its ability to collect taxes." See id.

Nothing at all similar is involved here. True, the Energy Companies say that Rhode Island's claims are "bound up with," "implicate," or "seek[] to replace" various "federal interests" — including energy policy, economic policy, environmental regulation, national security, and foreign affairs. But faced with comparable arguments, cases akin to this one flatly reject the idea that federal law is an *essential element* to the kind of classic state-law claims Rhode Island raises — claims, as we keep saying, that accuse the Energy Companies of contributing to climate change that (per the complaint) is wreaking havoc on the state's infrastructure and coastal communities. See San Mateo, 2022 WL 1151275, at *5; BP P.L.C., 31 F.4th at 208-15. To paraphrase these courts: none of Rhode Island's claims has as an element a violation of federal law; the Energy Companies pinpoint no specific federal issue that must necessarily be decided for Rhode Island to win its case; and their speaking about federal law

or federal concerns in the most generalized way is not enough for Grable purposes. See San Mateo, 2022 WL 1151275, at *5; BP P.L.C., 31 F.4th 208-15. Hence Rhode Island's state-law claims — like those in San Mateo and BP P.L.C. — are not among the rare few that "can[] be squeezed into the slim category Grable exemplifies." See Empire Healthchoice, 547 U.S. at 701.

*Complete Preemption*

As intimated above, Congress can pass a statute so broad that any complaint raising claims in that area is necessarily federal in nature and so is removable to federal court. See, e.g., Beneficial, 539 U.S. at 8. "Complete preemption," we must say (echoing a circuit relative of ours) "is 'a doctrine only a judge could love'" — "and one only judges could confusingly name." See Loffredo v. Daimler AG, 500 F. App'x 491, 495 (6th Cir. 2012) (quoting Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1075 (7th Cir. 1992)). "More productively thought of as a jurisdictional rather than a preemptive rule, complete preemption amounts to an exception to the well-pleaded complaint rule that converts a state-law claim . . . into a federal claim." Id.

Invoking this doctrine, the Energy Companies contend that the Clean Air Act completely preempts Rhode Island's claims and thus authorizes removal. So having ruled above "that the federal common law does not completely preempt the state-law claims, we now consider whether the federal act that displaced the

federal common law — the [Clean Air Act] — completely preempts them." See Suncor, 25 F.4th at 1263. No circuit to consider the kind of argument the Energy Companies press here has accepted it. See San Mateo, 2022 WL 1151275, at *6; BP P.L.C., 31 F.4th at 215-17; Suncor, 25 F.4th 1263-65. And we will not be the first.

"[T]he Clean Air Act is not one of the three statutes that the Supreme Court has determined has extraordinary preemptive force."[10] See San Mateo, 2022 WL 1151275, at *6 (quoting Oakland, 969 F.3d at 907); BP P.L.C., 31 F.4th at 215; Suncor, 25 F.4th at 1257. Also — and as noted previously — complete preemption requires that defendants show Congress *clearly intended* to supersede state authority. See, e.g., Metro. Life, 481 U.S. at 65-66. But the Clean Air Act says that "pollution prevention . . . and air pollution control at its source is the primary responsibility of *States and local governments*." See 42 U.S.C. § 7401(a)(3) (emphasis added); see also BP P.L.C., 31 F.4th at 215; Oakland, 969 F.3d at 908. And the Act has *two* "savings clauses" that expressly preserve non-Clean Air Act claims. See BP P.L.C., 31 F.4th at 216 (discussing "savings clauses that preserve state and local governments' legal right to impose standards and limitations on air pollution that are stricter than national

[10] Recall our earlier footnoted comments about the National Bank Act, the Employee Retirement Income Security Act, and the Labor Management Relations Act.

requirements"); see also Oakland, 969 F.3d at 907-08 (noting that the Act "preserves state-law causes of action pursuant to a saving clause" that "'makes clear that states retain the right to "adopt or enforce" common law standards that apply to emissions' and preserves '[s]tate common law standards . . . against preemption'" (discussing 42 U.S.C. § 7416, and quoting Merrick v. Diageo Ams. Supply, Inc., 805 F.3d 685, 690, 691 (6th Cir. 2015), which cites in turn W. Va. Univ. Hosp., Inc. v. Casey, 499 U.S. 83, 98 (1991))). All of which takes complete preemption off the table. See Suncor, 25 F.4th at 1263; accord BP P.L.C., 31 F.4th at 215-17; Oakland, 969 F.3d at 907-08. If more were needed, another prerequisite of complete preemption — do not forget — is that a statute supplies a federal cause of action to replace the state claim. See, e.g., Beneficial, 539 U.S. at 9; López-Muñoz, 754 F.3d at 5 (commenting that Supreme Court opinions "finding complete preemption share a common denominator: exclusive federal regulation of the subject matter of the asserted state claim, coupled with a federal cause of action for wrongs of the same type"). Accordingly then, the Clean Air Act's not providing an "exclusive federal cause of action for suits against private polluters" makes complete preemption a nonstarter too. See Suncor, 25 F.4th at 1263; accord BP P.L.C., 31 F.4th 215-17; Oakland, 969 F.3d at 907-08.[11]

[11] The Energy Companies make much of a Clean Air Act provision that lets states initiate federal-court challenges to actions by

*Federal Enclave*

Federal courts have federal-question jurisdiction over tort claims arising on federal enclaves. See, e.g., BP P.L.C., 31 F.4th at 217-18; Suncor, 25 F.4th at 1271. Rhode Island's complaint, however, specifically avoids seeking relief for damages to any federal lands in the Ocean State.[12] Faced with this reality, the Energy Companies claim that a big chunk of their "operative activities occurred on federal land" — like at the "Elk Hills Naval Petroleum Reserve" in California. See generally BP P.L.C., 31 F.4th at 217 (stating that "naval installations are generally considered federal enclaves"). The problem for them, though, is that "[t]he doctrine of federal enclave jurisdiction generally requires that *all* pertinent events t[ake] place on a federal enclave." See Suncor, 25 F.4th at 1271 (alterations by the Suncor Court and quotations omitted). And some of the pertinent events — *e.g.*, the Energy Companies' deceptive marketing and Rhode Island's injuries — occurred *outside* federal enclaves. See BP

---

the Environmental Protection Agency regarding nationwide emissions. But that section has nothing to do with Rhode Island's claims here, which (once again) concern the Energy Companies' deceptive promotion of damaging fossil-fuel products. See BP P.L.C., 31 F.4th at 215-17 (rejecting a similar complete-preemption argument); Suncor, 25 F.4th at 1264-65 (ditto); Oakland, 969 F.3d at 908 (ditto again).

[12] "Ocean State" is a nickname of Rhode Island. "Little Rhody" is another. See "List of U.S. state and territory nicknames," Wikipedia, https://en.wikipedia.org/wiki/List_of_U.S._state_and_territory_nicknames.

P.L.C., 31 F.4th at 217-18 (explaining that "federal-question jurisdiction is not conferred merely because *some* of Defendants' activities occurred on military installations"); see also San Mateo, 2022 WL 1151275, at *8 (finding that "[t]he connection between conduct on federal enclaves and the Counties' alleged injuries is too attenuated and remote to establish that the Counties' cause of action is governed by federal law applicable to any federal enclave"). Enough said about that issue.

**OCSLA Jurisdiction**

Pointing to their "substantial" activities on the outer continent shelf ("OCS") — they say "the five" biggest "operators" there since the mid-1990s "have included at least three entities among the [Energy Companies] here (or a predecessor) or one of their subsidiaries" — the Energy Companies also maintain that federal jurisdiction exists under OCSLA.[13] That statute extends such jurisdiction to "cases and controversies arising out of, or *in connection with*[,] . . . any operation conducted on the [OCS] which involves exploration, development, or production of . . . minerals." 43 U.S.C. § 1349(b)(1) (emphasis added). The italicized phrase — "in connection with" — bears directly on this case. Our circuit (as the parties seem to agree) has not yet

[13] The OCS includes the seabed and natural resources lying "3 miles to 200 miles off the United States coast." See Ctr. For Biological Diversity v. U.S. Dep't of Interior, 563 F.3d 466, 472, (D.C. Cir. 2009); see also 43 U.S.C. §§ 1301(a), 1331(a).

addressed that phrase's meaning. Which explains why the Energy Companies rely big time on cases from the Fifth Circuit that have.[14]

OCSLA jurisdiction exists, says the Fifth Circuit, if "(1) the activities that caused the injury constituted an 'operation' 'conducted on the [OCS]' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation," In re Deepwater Horizon, 745 F.3d 157, 163 (5th Cir. 2014) ("Deepwater") (quoting OCSLA) — a "jurisdictional test" intended "to cover a '"wide range of activity occurring beyond the territorial waters of the states,"'" Suncor, 25 F.4th at 1272 (quoting Barker v. Hercules Offshore, Inc., 713 F.3d 208, 213 (5th Cir. 2013), in turn quoting Texaco Expl. & Prod., Inc. v. AmClyde Engineered Prods. Co., 448 F.3d 760, 768 (5th Cir. 2006), amended on reh'g, 453 F.3d 652 (5th Cir. 2006)); accord BP P.L.C., 31 F.4th at 219-20. Though the Energy Companies argue otherwise, the test's "second prong" — the only prong in dispute — might require "'a but-for connection.'" See Suncor, 25 F.4th at 1272 (quoting Deepwater, 745 F.3d at 163); accord BP P.L.C., 31 F.4th at 220 ("declin[ing] to disrupt th[e] settled and sensible trend" of cases holding that "'arise out of, or in connection with' under the OCSLA . . . imposes a but-for relationship between a party's case and operations on the OCS").

[14] The Fifth Circuit is quite familiar with OCSLA, apparently.

Cf. generally Maracich v. Spears, 570 U.S. 48, 60 (2013) (noting that "[t]he phrase 'in connection with' provides little guidance without a limiting principle").[15] We say "might" because the Ninth Circuit holds "that the language of § 1349(b), 'aris[e] out of, or in connection with,' does not *necessarily* require but-for causation." See San Mateo, 2022 WL 1151275, at *10 (emphasis added). But we need not wrestle the but-for-causation issue to the ground today. And that is because "[d]espite [the] different approach[es] to construing § 1349(b), our sister circuits' application of § 1349(b) leads to a materially similar result," see id. — as we now explain.

Cases finding OCSLA jurisdiction involve "either . . . a direct physical connection to an OCS operation (collision, death, personal injury, loss of wildlife, toxic exposure) or a contract or property dispute directly related to [that] operation." See id. (quoting Suncor, 25 F.4th at 1273 (stockpiling cases)). The "core" of Rhode Island's suit concerns how the Energy Companies "knew what fossil fuels were doing to the environment and continued

[15] Arguing against the but-for standard, the Energy Companies hype Ford Motor Co. v. Montana Eighth Judicial District Court, 141 S. Ct. 1017 (2021). Ford Motor Co. held that the "requirement of a 'connection' between a plaintiff's suit and a defendant's activities" for a court to exercise personal jurisdiction is not the same as but-for causation. See id. at 1026. Like the Ninth Circuit, however, "we are skeptical that Ford Motor Co.'s interpretation of judicial rules delineating the scope of a court's specific personal jurisdiction is pertinent in this different statutory context." See San Mateo, 2022 WL 1151275, at *10.

Case: 19-1818 Document: 00117879377 Page: 29 Date Filed: 05/24/2022 Entry ID: 6497322

to sell them anyway, all while misleading consumers about the true impact of the products." See Shell Oil, 979 F.3d at 54. The Energy Companies talk up how "extensive [their] OCS operations" are. That may be. But Rhode Island's claims concern their "overall conduct, not whatever unknown fraction of their fossil fuels was produced on the OCS." See Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc., 405 F. Supp. 3d 947, 979 (D. Colo. 2019).[16] And just because the Energy Companies' have "extensive OCS operations" does not mean that Rhode Island's claims satisfy OCSLA's in-connection-with benchmark. If it did then *any* suit against fossil-fuel companies regarding *any* adverse impact linked to their products would trigger OCSLA federal jurisdiction because (to quote Rhode Island's latest brief) "a significant portion" of the oil and gas we use comes from the OCS — a consequence too absurd to be attributed to Congress. See generally Sheridan v. United States, 487 U.S. 392, 402 n.7 (1988) (explaining that "courts should strive to avoid attributing absurd designs to Congress"). Anyhow, Rhode Island's allegations "do not refer to actions taken on the [OCS]." See San Mateo, 2022 WL 1151275, at *11. Ergo, the Energy Companies have not shown that Rhode Island's "tort claims 'aris[e] out of'" or are "'in connection with' [their]

---

[16] That is the decision the Tenth Circuit affirmed in Suncor.

operations on the [OCS] for purposes of" OCSLA jurisdiction. See id.

Pulling out all the stops, the Energy Companies write that "OCSLA jurisdiction is also proper for the additional and independent reason that the relief [Rhode Island] seeks would" present an obstacle to "the efficient exploitation of the minerals from the OCS" — thus jeopardizing "the continued scope and viability of [their] OCS operations and the federal OCS leasing program as a whole." Their theory is that a large monetary judgment against them "would inevitably deter" OCS operations. But like the Tenth Circuit, we fail "to see how such a prospective theory of negative economic incentives — flowing from a lawsuit that does not directly attack OCS exploration, resource development, or leases — is anything other than contingent and speculative." See Suncor, 25 F.4th at 1275. And "contingent and speculative" do not suffice for OCSLA jurisdiction purposes. See id.; accord BP P.L.C., 31 F.4th at 222.

**Admiralty Jurisdiction**

The Energy Companies also think they can get the case into federal court under admiralty jurisdiction because (to quote their brief) "fossil-fuel extraction occurs on vessels engaged in maritime commerce." We think not, however.

The Constitution extends federal jurisdiction to "admiralty and maritime" cases. See U.S. Const., art. III, § 2,

cl. 1. And Congress grants federal courts jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." See 28 U.S.C. § 1333(1).[17] While "not entirely clear," it seems the drafters of the saving-to-suitors clause intended to "preserve[] remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims." See Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 444, 445 (2001).[18]

The district judge in our case relied on a line of decisions indicating that admiralty issues — without more — cannot make a case removable from state to federal court. The Energy Companies call this reversible error, writing that a recent amendment to section 1441 (the general-removal statute) jettisoned jargon that these courts had used "to block the removal of admiralty claims absent another basis for federal jurisdiction." "[C]ourts," however, "split on whether the working of the amended statute changes the rule for removal of maritime claims." BP P.L.C., 31 F.4th at 226 (quoting Thomas J. Schoenbaum, Admiralty

---

[17] "Suitors" in this context is just another word for "plaintiffs." See 14A Federal Practice & Procedure Jurisdiction § 3672.

[18] Courts often use "admiralty" and "maritime" synonymously. See Adamson v. Port of Bellingham, 907 F.3d 1122, 1125 n.4 (9th Cir. 2018). See generally Sisson v. Ruby, 497 U.S. 358, 362 (1990) (using "admiralty jurisdiction" and "maritime jurisdiction" interchangeably).

and Maritime Law § 4.3, Westlaw (database updated Dec. 2021)). We need not choose sides, because even if saving-to-suitors actions are freely removable under section 1441 (and we are not saying either way), the Energy Companies still face an insurmountable obstacle.

A tort claim comes within our admiralty jurisdiction if the party invoking that jurisdiction "satisf[ies] conditions both of location and of connection with maritime activity." See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). The test is intricate. But we can make short work of the Energy Companies' effort by focusing on one facet. When, as here, the "injury suffered" is on "land," the jurisdiction-invoking party must show that "a vessel on navigable water" caused the tort. See id. So even if the Energy Companies could show that fossil-fuel extraction occurs on "vessels," that gets them nowhere.[19] We say that because Rhode Island does not allege any vessel caused the land-based injuries (the complaint alleges their dangerous products and misleading promotion caused Rhode Island's injuries, not a vessel) — a point made in Rhode Island's brief, without contradiction from the Energy Companies in their reply

[19] Rhode Island apparently disagrees with the Energy Companies' claim that "a floating oil rig," for example, is a vessel used for navigation. Given our "even if" approach, we have no need to wade into that debate.

brief. And that means no admiralty jurisdiction exists in this case. See BP P.L.C., 31 F.4th at 227.

**Bankruptcy Jurisdiction**

As we noted a little while ago, a party in a civil suit may remove claims "related to" bankruptcy cases. See 28 U.S.C. §§ 1452(a), 1334(b). Seizing on this, the Energy Companies tell us that Rhode Island's complaint is "related to" bankruptcy cases because it "seeks to hold [them] liable for the pre-bankruptcy operations of Texaco Inc. (a subsidiary of Chevron) and Getty Petroleum." "Texaco's confirmed bankruptcy plan," the Energy Companies say, "bars various claims arising against it" before "March 15, 1988." And, they add, Rhode Island's "allegations against Texaco include conduct" before that date. Quoting a Fourth Circuit opinion — Valley Historic Ltd. Partnership v. Bank of New York, 486 F.3d 831, 836-37 (4th Cir. 2007) — they then write that deciding Rhode Island's "claims would 'affect the interpretation, implementation, consummation, execution, or administration of [Texaco's] confirmed plan.'"[20]

But taking another page from the Fourth Circuit's BP P.L.C. opinion — which considered and rejected a strikingly similar argument — we rule not only that "there is no indication that the bankruptcy plan involved climate change" but also that the Energy

[20] The internal quotations are from the Fourth Circuit case.

Companies offer no convincing explanation for "how a judgment more than thirty years later could impact Texaco's estate." See 31 F.4th at 223. And even if they think their appellate papers give the needed indication and explanation, we would consider the argument "too skeletal or confusingly constructed and thus waived." See Págan-Lisboa v. Soc. Sec. Admin., 996 F.3d 1, 7 (1st Cir. 2021) (quotation marks omitted). The Energy Companies also vaguely suggest (emphasis ours) that Rhode Island's "theories of liability" are based on the actions of their "predecessors, subsidiaries, and affiliates" and so "affect *additional* bankruptcy matters." But that perfunctory comment is insufficient to preserve the issue for appeal. See, e.g., Rodríguez, 659 F.3d at 175-76. The bottom line is that "we find no federal jurisdiction under the bankruptcy[-]removal statute." See BP P.L.C., 31 F.4th at 225.

**Final Words**

We *affirm* the district judge's order remanding the case to Rhode Island state court. Costs to Rhode Island.